# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**GREGORY M. RICE, #296423**

       **Petitioner,**

**v.**                              **Case No. 2:06-CV-11610**
                                    **Honorable Denise Page Hood**
                                    **Magistrate Judge Virginia M. Morgan**

**JEFF WHITE,**

       **Respondent.**
_____/

## OPINION AND ORDER GRANTING PETITION
## FOR A WRIT OF HABEAS CORPUS

Petitioner, Gregory Rice, is a state inmate currently incarcerated at St. Louis Correctional Facility in St. Louis, Michigan. Petitioner was convicted after a jury trial in Wayne County Circuit Court of first-degree murder, Mich. Comp. Laws §750.316; and possession of a firearm during the commission of a felony, Mich. Comp. Laws §750.227b. He was sentenced to life imprisonment for the first-degree murder conviction and a consecutive two year term for the felony-firearm conviction[1].

Petitioner has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. §2254. For the reasons that follow, the Court grants the petition.

---

[1]Petitioner was tried jointly with co-defendant Jerome Knight.

## I.  BACKGROUND

Petitioner's conviction arose from the shooting death of Yahnika Hill.  Jerome Knight and Yahnika Hill had a son[2].  Ms. Hill and Mr. Knight did not have an amicable relationship and there were frequent disagreements over visitation and custody.  The prosecution presented evidence that Mr. Knight lodged several threats of physical harm against Ms. Hill.  Evidence was also presented that Mr. Knight solicited Rodney Coleman[3] by offering him one thousand ($1,000.00) dollars to kill Ms. Hill.  Mr. Coleman refused the offer.  The prosecution  theorized that Mr. Knight then solicited Petitioner to murder Ms. Hill in exchange for posting bond for Petitioner who was incarcerated at the time the offer was made.  Mr. Coleman testified that Petitioner confessed to him that he came upon Ms. Hill as she was sitting in her car and shot her in the face.

Petitioner denies that he made such a confession.  He claims that he was at his grandmother's home when the shooting occurred and that he used his own money to post bond.

Following Petitioner's conviction, he filed a direct appeal with the Michigan Court of Appeals raising the following claims:

> I.  Whether defendant was deprived of his right to due process and to a fair trial
> under the 14th Amendment to the United States Constitution and under section 17,
> article 1, Michigan Constitution 1963 when the trial judge denied defendant's motion
> for directed verdicts since the evidence adduced  by the prosecution to prove

---

[2]  Her son's name was Christopher Bennett, named after Ms. Hill's ex-boyfriend. However, her son was also known as Jaylin Knight.  It was not known who the child's father was initially.  At some point it was determined that Jerome Knight was the father and Ms. Hill was in the process of getting his name changed to Jaylin Knight.  Ms. Hill's son will be referenced as Jaylin Knight.

[3]  Mr. Knight, Mr. Coleman and Petitioner knew each other from the neighborhood and from the barbershop they frequented.

defendant's guilt was insufficient to persuade any rational trier of the facts that all of the elements of the crimes charged including the element of the identity of defendant as the perpetrator of the crimes were established beyond a reasonable doubt.

II.  Whether defendant's convictions are infirm under the 14th Amendment to the United States Constitution and under section 17, article 1, Michigan Constitution 1963 because they are based upon a record of evidence which is insufficient to establish each and every fact beyond a reasonable doubt necessary to establish the crimes charged including the fact that it was the defendant who killed the deceased.

III.  Whether defendant was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under section 17, article 1, Michigan Constitution 1963 when the trial judge in her charge to the jury delivered an insufficiently explanatory instruction on the law of alibi which was defendant's  main defense.

IV.  Whether defendant was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under section 1, article 1, Michigan Constitution 1963 when the trial prosecutor in argument to the jury (1) vouched for the credibility of prosecution  witnesses and denigrated the veracity of defendant's   testimony; (2) testified to facts of her own personal knowledge; and (3) expressed her personal opinion at the defendant's guilt.

V.  Whether defendant was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under section 17, article 1, Michigan Constitution 1963 when the  prosecutor was permitted to elicit from the main prosecution witness against defendant that he had told the substance of his in-court testimony to his auntie and to a police officer since the witnesses' out-of-court statements were not under oath were not exempt from the rule prohibiting adducement of hearsay as evidence and because they were incompetent prior consistent statements.

VI.  Whether defendant was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under section 17, article 1, Michigan Constitution 1963 when the  prosecutor was permitted to elicit from the main prosecution witness against defendant that he feared for his life at the hands of defendant Rice and of defendant Knight.

VII.  Whether defendant was deprived of his right under the 6th Amendment to the United States Constitution and under section 20, article 1, Michigan Constitution 1963 to effective assistance of counsel on the trial  when his trial counsel: (1) failed to object to insufficient instruction on alibi; (2) failed to object to prejudicial

argument by the prosecutor to the jury; and (3) failed to object to testimony of prosecution witness that he feared for his life.

Petitioner then filed a supplemental Rule 11 brief raising the following claim:

Whether defendant was deprived of his right under the 6th Amendment to the United State Constitution and under section 20, article 1, Michigan Constitution 1963, to the effective assistance of trial counsel and due process of law entitled defendant to a fair trial under the 14th Amendment to the United States Constitution and under section 17, article 1, of the Michigan Constitution 1963, when counsel on trial (1) failed to object to the admission of inadmissible hearsay testimony of prosecution witness, (2) failed to move the trial court to suppress highly prejudicial testimony elicited from prosecution witness whose testimony lack factual support, (3) failed to proceed with and argue defendant's motion for severance of trial under separately included issues contained within filed motion, (4) failed to request or prepare proposed jury instruction for multiple defendants, to consider evidence and law as it applies to each defendant and (5), errors committed by defendant counsel had a cumulative effect on the trial so proceeding where his performance was so incompetent to where defendant could not have received a fair trial or effective assistance.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Rice*, No. 225865, 2002 WL 31310158 (Mich. Ct. App. Oct. 15, 2002). Petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court raising issues I - IV and VII, *supra,* and the following claim:

Defendant was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under section 17, article 1, Michigan Constitution 1963 when the trial court failed to give the mandatory (CJI 2d 2.19) instruction in a multiple defendant trial.

The Michigan Supreme Court ruled that "pursuant to MCR 7.302(F)(1), in lieu of granting leave to appeal, we VACATE the portion of the judgment of the Court of Appeals concerning defendant's peremptory challenge issue under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and REMAND for reconsideration of that issue." *People v. Rice*, 468 Mich. 922; 664 NW2d 214 (2003) (table)[4]. Petitioner filed a supplemental brief on remand raising the following two issues:

_____

[4] The Michigan Court of Appeals did not address a peremptory challenge or *Batson* issue on direct appeal because the issue was not raised by Petitioner. However, since the Michigan Supreme Court noted that the "[t]rial transcript indicates that the trial judge was not satisfied with the prosecutor's race neutral reasons for peremptorily dismissing multiple jurors,"it

-4-

Whether the trial judge erred in finding a *Batson* violation.

Whether the trial court was correct in ruling that the racial composition of the final jury cured any *Batson* violation that was not cured due to the failure to reseat the peremptorily dismissed jurors.

On remand, the Michigan Court of Appeals again affirmed Petitioner's conviction and stated

in pertinent part:

We must accept the trial court's rejection of the prosecutor's race-neutral explanations  as a finding of purposeful discrimination.  However, that implicit finding of purposeful discrimination directly conflicts with the trial court's belief, clearly stated on the record, that the attorneys for all parties selected a jury motivated solely by the desire to have fair and impartial persons hear the case.  The trial court's own language cannot support a finding of purposeful discrimination.  Moreover, there were valid race-neutral reasons articulated by the prosecutor justifying the peremptory challenges of venirepersons #2 and #9.  Venireperson #9 was very familiar with the circumstances surrounding a first cousin's arrest and conviction on a drug charge, and venireperson #2 "hoped" she would not compare the victim to her own daughter who was about the same age as the victim. . . .  Therefore, although we give great deference to the trial court's findings on a *Batson* issue, the record does not support a conclusion of purposeful discrimination, and the court erred in finding a *Batson*  violation.

*People v. Rice,* No: 225865 2003 WL 22299839 (Mich. Ct. App. Oct. 7, 2003).

Petitioner filed an application for leave to appeal with the Michigan Supreme Court which

was granted, but "limited to the issues whether (1) the prosecutor's race-neutral reasons for

dismissing jurors No[s]. 2 and 9 were sufficient to avoid a finding of purposeful discrimination in

the exercise of peremptory challenges; (2) the trial court correctly found that jury selection did not

violate  *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), because 'the same

number if not more' unchallenged African- American jurors remained on the jury that heard the

case; and (3) the trial judge correctly continued the trial with the existing jury panel after she

---

remanded "to the Court of Appeals for reconsideration of whether the trial judge erred in finding a *Batson* violation." *Rice*, 468 Mich. 922.

expressed dissatisfaction with the prosecutor's 'race neutral' reasons for excusing two African-American jurors who could not be recalled." *People v. Rice*, 470 Mich. 869; 682 NW2d 85 (2004) (table).

In further support of Petitioner's application for leave to appeal, Petitioner filed a supplemental brief raising the following issues:

1.  The appellate court erred ruling that the prosecutor had not systematically excluded minorities from the defendant's jury by use of peremptory challenges in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2.  Defendant was denied his State and Federal Constitutional right to the assistance of counsel on appeal.

3.  This court should rule upon the merits of defendant's prior delayed application for leave to appeal.

4.  The prosecutor's race-neutral reasons for dismissing juror's #2 and #9 were insufficient to avoid a finding of purposeful discrimination in the exercise of peremptory challenges. Further, the trial court's finding was not clearly erroneous.

5.  The trial court incorrectly found that the final panel cured the *Batson* violation.

6.  The trial court erroneously continued the trial with the existing panel after rejecting the prosecutor's "race-neutral" reasons.

7.  The trial court's finding of a *Batson* violation was sufficiently clear on this record, and was not clearly erroneous.  The trial court's subsequent decision to proceed with the trial was an abuse of discretion.

The Michigan Supreme Court affirmed Petitioner's conviction:

On the basis of our reading of the voir dire transcripts, we hold no *Batson* violation occurred in this case and the trial judge neither explicitly nor implicitly found such a violation.  Giving the appropriate degree of deference to the trial judge's ultimate finding that the prosecutor did not engage in purposeful discrimination, we affirm defendants'[5]

---

[5]Jerome Knight and Petitioner's cases were jointly submitted for appeal.

*People v. Knight*, 473 Mich. 324; 701 NW2d 715 (2005) (table). Justices Weaver, Young and Markman concurred "in the majority's conclusion that, on a fair reading of the record, the trial court did not find that prospective jurors were excluded on the basis of race in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)." *Id.* at 352.

> Unlike the majority, [Justices Weaver, Young and Markman] do not speculate with regard to the reasons for the trial court's statements. [They] simply conclude that after a fair reading of the record, the trial court did not find that a *Batson* violation had occurred."

*Id.* at 353, n. 1.

> Justice Cavanagh concurred in part and dissented in part stating as follows:

> I agree with the legal principles announced in parts II(A) and II(B) of the majority's opinion [I do not join part II(c) of the majority opinion because I do not believe that these cases are the proper vehicle to explore when a *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), objection must be raised]. I write separately because I disagree with the majority's reading of the record . I believe that an evenhanded reading of the record demonstrates that the trial court found that prospective jurors were excluded on the basis of race in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny. Further, I would hold that the trial court correctly made this determination under *Batson's* three-step test. Upon making this determination, however, the trial court reasoned that any *Batson* violation was cured by the eventual makeup of the jury because "the same number if not more" unchallenged African-American jurors remained on  the panel that ultimately decided these cases. I would hold that the initial *Batson* violation was not cured by the eventual makeup of the jury and, thus, the trial court erred by continuing the proceedings in this manner. Accordingly, I would reverse the judgements of the Court of Appeals and remand these cases for new trials.

*Id.* at 353-54; *Id.* at 354. n.1.

Petitioner then filed a petition for writ of certiorari with the United States Supreme Court raising the following claim:

> The Michigan Supreme Court's "factual finding" that the trial  court "did not" find a *Batson* violation as a matter of law, constitutes a denial of fundamental due process under the U.S. Constitution in (U.S.C.A. 6 & 14) and is clearly erroneous under *U.S.*

*v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948), where the trial court "did" find a *Batson* violation.

On November 28, 2005, the United States Supreme Court denied Petitioner's Petition for Writ of

Certiorari. *See Rice v. Michigan*, 546 U.S. 1043 (2005). Petitioner has now filed the present *pro*

*se* petition pursuant to 28 U.S.C. § 2254, raising the following twenty-one issues for the Court's

review:

I.  Whether defendant was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under section 17, article 1, Michigan Constitution 1963 when the trial judge denied defendant's motion for directed verdicts since the evidence adduced by the prosecution to prove defendant's guilt was insufficient to persuade any rational trier of the facts that all of the elements of the crimes charged including the element of the identity of defendant as the perpetrator of the crimes were established beyond a reasonable doubt.

II.  Whether defendant's convictions are infirm under the 14th Amendment to the United States Constitution and under section 17, article 1, Michigan Constitution 1963 because they are based upon a record of evidence which is insufficient to establish each and every fact beyond a reasonable doubt necessary to establish the crimes charged including the fact that it was the defendant who killed the deceased.

III.  Whether defendant was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under section 17, article 1, Michigan Constitution 1963 when the trial judge in her charge to the jury delivered an insufficiently explanatory instruction on the law of alibi which was defendant's main defense.

IV.  Whether defendant was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under section 17, article 1, Michigan Constitution 1963 when the trial prosecutor in argument to the jury (1) vouched for the credibility of prosecution witnesses and denigrated the veracity of defendant's testimony; (2) testified to facts of her own personal knowledge; and (3) expressed her personal opinion at the defendant's guilt.

V.  Whether defendant was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under section 17, article 1, Michigan Constitution 1963 when the prosecutor was permitted to elicit from the main prosecution witness against defendant that he had told the substance of his in-court testimony to his auntie and to a police officer since the witnesses' out-

of-court statements were not under oath were not exempt from the rule prohibiting adducement of hearsay as evidence and because they were incompetent prior consistent statements.

VI. Whether defendant was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and under section 17, article 1, Michigan Constitution 1963 when the prosecutor was permitted to elicit from the main prosecution witness against defendant that he feared for his life at the hands of defendant Rice and of defendant Knight.

VII. Whether defendant was deprived of his right under the 6th Amendment to the United States Constitution and under section 20, article 1, Michigan Constitution 1963 to effective assistance of counsel on the trial when his trial counsel: (1) failed to object to insufficient instruction on alibi; (2) failed to object to prejudicial argument by the prosecutor to the jury; and (3) failed to object to testimony of prosecution witness that he feared for his life.

VIII. Whether defendant was deprived of his right under the 6th Amendment to the United State Constitution and under section 20, article 1, Michigan Constitution 1963, to the effective assistance of trial counsel and due process of law entitled defendant to a fair trial under the 14th Amendment to the United States Constitution and under section 17, article 1, of the Michigan Constitution
1963, when counsel on trial (1) failed to object to the admission of inadmissible hearsay testimony of prosecution witness, (2) failed to move the trial court to suppress highly prejudicial testimony elicited from prosecution witness whose testimony lack factual support, (3) failed to proceed with and argue defendant's motion for severance of trial under separately included issues contained within filed motion, (4) failed to request or prepare proposed jury instruction for multiple defendants, to consider evidence and law as it applies to each defendant and (5), errors committed by defendant counsel had a cumulative effect on the trial so proceeding where his performance was so incompetent to where defendant could not have received a fair trial or effective assistance.

IX. Whether the prosecution's argument is predicated upon a[n] incorrect application of MRE 1004.

X. Whether the prosecution's second argument is predicated upon insufficient facts derived from the prosecution's incorrect application of MRE 1004.

XI. Whether the prosecutor's third argument is predicated upon insufficient facts derived from the prosecution's incorrect application of MRE 1004.

XII. Whether the prosecutor's fourth argument is predicated upon insufficient facts derived from the prosecution's incorrect application of MRE 1004.

XIII.  Whether the trial judge erred in finding a *Batson* violation.

XIV.  Whether the trial court was correct in ruling that the racial composition of the jury panel cured any *Batson* violation that was not cured due to the failure to reseat the peremptorily dismissed jurors.

XV.  Whether the appellate court erred ruling that the prosecutor had not systematically excluded minorities from the defendant's jury by use of peremptory challenges in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

XVI.  Whether the Michigan Supreme Court should have ruled upon the merits of Petitioner's prior delayed application for leave to appeal.

XVII.  Whether the prosecutor's reasons for dismissing juror's #2 and #9 were sufficient to avoid a finding of purposeful discrimination in the exercise of peremptory challenges.

XVIII.  Whether the trial court correctly found that jury selection did not violate *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), because "the same number if not more" unchallenged African-American jurors remained on the jury that heard the case.

XIX.  Whether the trial judge erroneously continued the trial with the existing panel after she expressed dissatisfaction with the prosecutor's race-neutral reasons for excusing two African-American jurors who cold not be recalled.

XX.  Whether the trial court's finding of a *Batson* violation was sufficiently clear on this record, and was not clearly erroneous;  the trial court's subsequent decision to proceed with the trial was an abuse of discretion.

XXI.  Whether the Michigan Supreme Court's "factual finding" that the trial  court "did not" find a *Batson* violation as a matter of law, constitutes a denial of fundamental due process under the U.S. Constitution in (U.S.C.A. 6 & 14) and is clearly erroneous under *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948), where the trial court "did" find a *Batson* violation and the court's ruling conflicts with clearly established federal law.[6]


## II.    STANDARD

---

[6]    Arguments IX - XII were raised in Petitioner's reply brief before the state courts in response to the  prosecution's responsive brief to Petitioner's Rule 11 supplemental brief.

Petitioner is not entitled to the writ of habeas corpus unless the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

## III.     DISCUSSION

### A.     Sufficiency of Evidence (Claims I & II)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). However, the critical inquiry on review of the sufficiency of the evidence is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318 (1979). As the Supreme Court explained:

> This inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the

relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.*, 443 U.S. at 318-19. (internal citation and footnotes omitted).

This "standard must be applied with explicit references to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. "Normally, pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent." *Wolfe v. Bock,* 412 F. Supp. 2d 657, 681 (E.D. Mich. 2006). However, "[t]he habeas court does not substitute its own judgment for that of the finder of fact." *Alder v. Burt,* 240 F. Supp. 2d 651, 661-62 (E.D. Mich. 2003). Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge*, 190 F. Supp. 2d 974, 985 (E.D. Mich. 2002) (internal quotations omitted). In a federal habeas proceeding, the scope of review of the sufficiency of evidence in a state criminal prosecution "is extremely limited and a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry v. Bock*, 208 F.Supp.2d 780, 794 (E.D. Mich. 2002).

### 1. Identification of the Perpetrator

Petitioner claims that the trial court erred in failing to direct a verdict of acquittal based on the insufficiency of the evidence. Petitioner first contends that the charge of first-degree murder should not have been submitted to the jury because there was insufficient evidence with regard to the identity of the perpetrator. The Michigan Court of Appeals disagreed and stated as follows:

The prosecution presented evidence that codefendant Knight had threatened to kill the victim, with whom he was involved in a dispute over the custody of their child. There was evidence that codefendant Knight had previously solicited another person,

Rodney Coleman, to kill "a girl" and that Knight subsequently arranged to bail defendant out of jail. According to Coleman, defendant later told Coleman that he had killed "a girl" by shooting her in the face as she sat in a parked car, which was consistent with how the victim was killed. There was also evidence that defendant either told Coleman that the girl he shot was "J.J.'s baby's mother to be exact," or that Coleman understood that to be what defendant meant. Viewed in a light most favorable to the prosecution, and making credibility choices in support of the jury verdict, the evidence was sufficient to identify defendant a the person who shot and killed the victim.

*Rice,* 2002 WL 3130158, *1. This decision is neither contrary to, or an unreasonable application of Supreme Court precedent, nor is it based on an unreasonable determination of the facts in light of the evidence presented at trial. "[A]n admission by the accused identifying himself as the person involved in the (crime) is sufficient to sustain a guilty verdict when the crime itself is shown by independent evidence." *United States v. Opdahl*, 610 F. 2d 490, 494 (8th Cir. 1979). In addition to Petitioner's admission to Mr. Coleman implicating himself as the shooter, there was testimony from Clifford Fuller and David Babcock. Mr. Fuller testified that he discovered Ms. Hill's body while driving on the east side of Detroit. (Tr., 7/29/99, at 92-93). Mr. Babcock is a Detroit Police Evidence Technician; and he also testified that Ms. Hill's body was found on the east side of Detroit. (Tr., 8/4/99 at 65-67). Mr. Coleman testified that Petitioner told him that he shot "a girl" on the east side of Detroit. (Tr., 8/9/99, at 29). Finally, Mr. Fuller testified that just before he discovered Ms. Hill, the only other vehicle he noticed in the area was a small yellow or beige car, which he believed to be a Dodge product. (Tr., 7/29/99, at 93-94). Mr. Coleman testified that Petitioner possessed a GEO Tracker two days before the shooting, which is small vehicle. (Tr., 8/9/99, at 31).

The identity of a defendant can be inferred through circumstantial evidence. *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). The circumstantial evidence in this case, when viewed in a light most favorable to the prosecution, was sufficient to lead a rational trier of fact to conclude that Petitioner was the shooter. Because there was sufficient evidence presented at trial for a rational

trier of fact to conclude beyond a reasonable doubt that Petitioner was the perpetrator of the crime, Petitioner is not entitled to habeas relief on his first claim. *Dell,* 194 F. Supp. 2d at 648.

### 2. First-Degree Murder

Petitioner next claims that there was insufficient evidence to support submitting the first-degree murder charge to the jury.

Under 28 U.S.C. § 2254(d)(1), the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. See *Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998). While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). To prove first-degree murder, the prosecution must establish that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. Mich. Comp. Laws § 750.316(1)(a), (b).

Under Michigan law, "[p]remeditation is measured in time; time to permit a reasonable person to subject the nature of his response to a second look." *People v. Brown*, 137 Mich. App. 396, 407, 358 N.W.2d 592, 597 (1984). "The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing." *People v. Anderson*, 209 Mich. App. 527, 537; 531 N.W.2d 780, 786 (1995). Relevant factors include the relationship of the parties, the defendant's

actions prior to the killing, the circumstances of the killing, and the defendant's conduct after the killing. *Id.*; *Brown*, 137 Mich. App. at 407. Further, because first-degree murder requires premeditation and deliberation rather than simply malice aforethought (as is required for second-degree murder), the actor must have the specific intent to kill in order to be convicted of first-degree murder. See *People v. Hart*, 437 Mich. 898, 898; 465 N.W.2d 328 (1991); *People v. Dykhouse*, 418 Mich. 488, 495; 345 N.W.2d 150 (1984); *People v. Aaron*, 409 Mich. 672, 715 n.102, 299 N.W.2d 304 (1980).

As with premeditation, "[t]he specific intent to kill may be proven by inference from any facts in evidence." *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (internal quotation omitted). Specifically, and in addition to other factors, the Court "may take into consideration 'the nature of the defendant's acts constituting the assault . . . [and] whether the instrument and means used were naturally adapted to produce death[].'" *Id.* (quoting *People v. Taylor*, 422 Mich. 554; 375 N.W.2d 1 (1985)).

In this case, Mr. Coleman's testimony regarding Petitioner's confession was as follows:

He said that he, like he was approaching her in his vehicle. And he told me, he said he was acting like he was trying to talk to her. And she had pulled to the side and he had got out, went up to the side of her car, and shot her in her face.

(Tr., 8/9/99, at 30). A rational trier of fact could determine from this testimony that Petitioner followed Ms. Hill and/or laid in wait for her, that the shooting was planned because he had a gun. Therefore, when viewed in a light most favorable to the prosecution, the evidence was sufficient to lead a rational trier of fact to conclude that Petitioner planned Ms. Hill's murder and intended to cause her death.

Petitioner presented an alibi defense through his grandmother, Grace Farmer. He also testified on his own behalf and denied that he confessed to Mr. Coleman. However, the jury did not find Ms. Farmer or Petitioner credible. To the extent that Petitioner challenges the inferences that the jury drew from the testimony presented at trial and the weight to be accorded certain pieces of evidence, he is not entitled to relief. *Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992). A habeas court must defer to the factfinder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys,* 319 F.3d 780, 788-89 (6th Cir. 2003).

"The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Id.* A rational jury could well choose to credit Mr. Coleman's testimony and to discount or reject outright Petitioner's alibi defense. The court on habeas review must in such cases defer to the jury's finding, made beyond a reasonable doubt, that the more credible witnesses supported the prosecution's charges. *See Matthews,* 319 F.3d at 788-89. Given the testimony adduced at trial, the Court finds that the Michigan Court of Appeals' decision to reject Petitioner's insufficiency of evidence argument relative to the first-degree murder charge was not an unreasonable application of law. The actions of Petitioner substantiate record evidence which reasonably supports a finding of guilt beyond a reasonable doubt of first-degree murder. See *Jackson,* 443 U.S. at 318.

Petitioner's claim that his conviction was not supported by constitutionally sufficient evidence is without merit and habeas relief is not warranted.

**B.     Procedural Default**

Claims III - VI[7] are procedurally defaulted because defense counsel failed to make a contemporaneous objection on the record at trial as to these issues. See *People v. Carines*, 460 Mich. 750, 763; 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687; 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." White v. Mitchell, 431 F.3d 517, 524 (6th Cir. 2006). The state procedural rule in question here is Michigan's contemporaneous objection rule, which requires defendants to make timely and specific objections at trial to preserve a claim for appellate review. *See Carines*, 460 Mich. at 763. This rule is a recognized and firmly established independent and adequate state law ground for refusing to review trial errors. *Id.*, *Stanaway*, 446 Mich. at 687.

Therefore, this Court may not review Petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Notwithstanding Petitioner's default on these claims, this Court may deny them on the merits. "The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones,* 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary,* 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily

---

[7] Alibi jury instruction (III); prosecutorial misconduct (IV - V); and error in the admission of hearsay evidence (VI).

resolvable against the habeas petition, whereas the procedural-bar issue involved complicated issues of state law.")

Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claims, it would be most efficient to consider the merits of the claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

### C. Alibi Jury Instruction (Claim III)

Petitioner argues that he was denied a fair trial because the jury received an improper alibi jury instruction. Specifically, Petitioner alleges that the trial court should have differentiated between Petitioner and his co-defendant when giving the alibi jury instruction and that the trial court should have included an instruction that the alibi defense, if established, was a perfect defense. The Michigan Court of Appeals rejected this argument finding as follows:

> The trial court instructed the jury in accordance with CJI2d 7.4 as defendant requested. Nonetheless, defendant complains that the court erred in using the term "defendants" in the instruction, which was improper because the instruction did not pertain to codefendant Knight . . . The jury was instructed that the prosecution had the burden of proving that the defendants were "actually there when the alleged crime was committed," and that it should find the defendants not guilty if it had a reasonable doubt about whether they were actually present when the crime was committed. The jury was adequately instructed on reasonable doubt and the guilty verdict implies that it would not have been acquitted defendant even if a perfect defense instruction had been given. Accepting that the alibi instruction did not apply to co-defendant Knight, defendant has failed to show how the use of the word "defendants" affected his substantial rights.

*Rice,* 2002 WL 3130158, *1. The Court finds that this decision is neither contrary to, or an unreasonable application of Supreme Court precedent. To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *Estelle v. McGuire,* 502 U.S. 62, 72 (1991); *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977). If an instruction is ambiguous and not necessarily erroneous, it violates the

Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly. *Estelle,* 502 U.S. 72, 73, n. 4. The Due Process Clause protects the accused against conviction except on proof beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358 (1970). The Supreme Court explained, however, that "the Constitution does not require that any particular form of words be used in advising as jury of the government's burden of proof." *Victor v. Nebraska,* 511 U.S. 1, 5 (1994).

The Sixth Circuit has noted that "[t]here are no magic words that must be included or omitted [in an alibi or reasonable doubt jury instruction]." *Binder v. Stegall,* 198 F.3d 177 (6th Cir. 1999). Trial courts have broad discretion in wording jury instructions. *United States v. Schlei,* 122 F.3d 944, 969 (11th Cir. 1997). The failure to give a particularly worded jury instruction does not require reversal in the absence of prejudice, that is a conviction should not be reversed on the basis of instructional error alone, unless the jury charge improperly guided the jury in such a substantial way as to violate due process. *Schlei,* 122 F.3d at 969.

The lack of presence jury instruction given by the trial court properly informed the jury that it could convict only if the prosecutor proved beyond a reasonable doubt that Petitioner was actually present when the shooting took place. The lack of presence jury instruction informed the jury that the burden of proof was on the prosecution and that, if after considering all of the evidence, it had a reasonable doubt about whether Petitioner was actually present when the charged crimes were committed, it must find him not guilty. (Tr., 8/19/99, at 101). These instructions were adequate to guide the jury in its consideration of Petitioner's defense that he had been at his grandmother's home at the time of the shooting. There is no reasonable likelihood that the charge improperly guided the jury resulting in the denial of due process. The Michigan Court of Appeals ruling that the complained of instruction was not improper was a reasonable application of applicable federal

constitutional law. Consequently, Petitioner's jury instruction challenge is denied.

### D. Prosecutorial Misconduct (Claim IV)

Petitioner next claims that habeas relief is warranted as a result of the prosecutor's misconduct during trial. Specifically, Petitioner asserts the prosecutor: (1) vouched for the credibility of her witnesses; (2) testified to facts based upon her own personal knowledge; (3) expressed her personal opinion about Petitioner's guilt; and (4) denigrated defense counsel.

Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). When a Petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. " *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997). On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir. 1999)*; Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355-56 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof against the accused. *Id.*

The actions of a prosecutor in misrepresenting facts in evidence can amount to substantial error, because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000)(*quoting Donnelly v. DeChristoforo,* 416 U.S. 637, 646 (1974)). In addition, asserting facts that were never admitted into evidence may mislead a jury in a prejudicial way. *Id.* However, prosecutors must be given

leeway to argue reasonable inferences from the evidence. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).

In addition, a prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocate's role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted).

The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999)(internal citations omitted). It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd,* 209 F.3d at 537. Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

Finally, the Sixth Circuit has expressed great reluctan[ce] to grant petitions based on improper prosecutorial statements at closing [or rebuttal] argument." *Wilson v. Mitchell,* 250 F.3d 388, 398 (6th Cir. 2001). The Court should view any misconduct in closing or rebuttal argument

in light of the strength of the competent proofs tending to establish guilt. *Angel v. Overburg,* 682

F.2d 605, 608 (6th Cir. 1982 (en banc).

### 1. Statements Regarding Vouching

**i**.

> [Petitioner] didn't have the money to bond himself out. Even though he would have
> you believe the preposterous thought he had, like, probably over a fourth of his
> earnings, if you want to take his W2 form that is submitted as evidence, in a car.
> How, r[i]diculous is that? Especially when you have a grandmother who would take
> you in, and she said whenever you wanted to. And other people that you know that
> can hold money for you. But, he insists on this preposterous story that he's got
> money in a car.

(Tr., 8/19/99, at 22). This statement was made during closing argument.

After review of the trial transcript, the prosecutor's remarks reflect reasonable inferences

from evidence adduced at trial. It was not improper for the prosecutor to suggest that Petitioner was

lying. *See United States v. Johnson,* 169 Fed. Appx. 946, 950 (6th Cir. 2006). There was evidence

that Petitioner was homeless at times, living in vehicles, and overall struggling financially. His

grandmother testified that he was living with her at the time of the shooting. Yet, Petitioner

testified that he kept cash in his car in the amount of $630.00. Taking together all of the testimony

together about Petitioner's circumstances, it was permissible for the prosecutor to argue the

reasonable inference that Petitioner's story was a fabrication.

**ii**.

> The money was not why Rodney Coleman would place his life in danger, Marlynda
> Mattison's life in danger, and his two children's life in danger in coming in here. He
> did it because it was the right thing.

*Id.* at 86. This statement was made during rebuttal argument.

This comment is consistent with Mr. Coleman's testimony. He testified that he was scared to testify and did not want to jeopardize his friendship with the parties involved, but that testifying was the "right thing to do." (Tr., 8/9/99, at 48). The prosecutor's remarks reflect reasonable inferences from evidence adduced at trial.

### 2.     Statements Based on Personal Knowledge

i.

> And [Clifford Fuller] did what you would expect a person rendering aid to do; he didn't flee the scene, because he had nothing to do with this. He did not evade the police and attempt to not answer questions, because he had nothing to do with this. And yet, you heard this person that basically was just a good Samaritan questioned over and over again by both counsel, as though he were a person that had something to do with this crime.

*Id.* at 15. This statement was made during closing argument. The Court finds that the prosecutor's argument was not improper. Through this statement the prosecutor was arguing a reasonable inference from the evidence that Mr. Fuller was not involved with the murder of Ms. Hill, despite a suggestion by Mr. Knight's counsel that Ms. Hill's death arose from her being run down by a vehicle, possibly Mr. Fuller's vehicle. There was no physical evidence to support such a theory.

ii.

> And so, what we know is (sic) that the inside of her [deceased's] purse was intact, papers were there. This is not a robbery. This was something that was done intentionally, deliberately and meant to kill her.

*Id.* at 16. This statement was made during closing argument. Here again the prosecutor was arguing a reasonable inference based on the evidence at trial. The evidence showed that Ms. Hill's purse

had not been tampered with, which leads to the reasonable conclusion that robbery was not the motive behind Ms. Hill's murder. Therefore, a reasonable inference is that Ms. Hill's murder was premeditated.

iii.

> Yes, he [defendant Knight] documented this. Yes, he was at home at the time when Yahnica Hill [deceased] was dead. And I think that you can be pretty sure that he was. And when he talks about this person Diandre Walson being with him, let's just assume that he absolutely was, because he was going to make sure that he was completely removed by this, from this.

*     *     *

> And so, why would this person, of all people, that has very little connection to him, do this wonderful thing? He [defendant Knight] provides the opportunity for Defendant Rice to commit this crime that he wants committed. And he wants himself removed from it. He's done a lot of things to document that he's the person that's doing things all the right way. And yet, his actions speak differently.

*Id.* at 21, 23. These statements were made during closing argument.

Both of these statements involve references to co-defendant Knight and his alibi defense. The prosecutor's remarks reflect reasonable inferences from evidence adduced at trial, and were not improper.

> Stephanie Harris is the lynch pin in this case. You heard Investigator Shaw say that there was not enough evidence, until they were able to put this together with information that she gave and talking to Rodney Coleman.

*Id.* at 86. This statement was made during rebuttal argument. Upon the Court's review of the record, the prosecutor's comments regarding Stephanie Harris were based upon the trial testimony which revealed that Ms. Harris is the individual who led the police to Rodney Coleman. Since Mr. Coleman's testimony is the most incriminating evidence against Petitioner, it was not an unreasonable inference to characterize Ms. Harris as the lynchpin of the investigation into Ms. Hill's

-24-

murder.  The prosecutor's argument was not improper.

### 3.	Statements Based on Personal Opinion of Guilt   I.

> And regarding what I was saying about not taking a long time.  The judge is going to instruct you regarding premeditation.  And in this case, premeditation begins at the time when Gregory Rice decided to get a weapon, drive, go up to the car, talk to this young woman, and then shoot her.

*Id.* at 20.  This statement was made during closing  argument.

> And certainly because none of us were (sic) there.  We won't know the exact time frame.  The Judge will instruct you that it's time to take a second look that the person has to have. And Gregory had time to take a second look in this case.

*Id.*  This statement was made during closing  argument.

> Why do they [defense counsel] spend so much time trying to convince you otherwise?  Because it's the sole way of discrediting Rodney Coleman.  Rodney Coleman wasn't there, but they want you to think that it couldn't have happened, that this girl could have been seated in the car.  And who would know that fact?  Defendant Rice would know that.

*Id.* at 83.  This statement was made during rebuttal argument.

The prosecutor's comments were based upon Rodney Coleman's testimony and were reasonable inferences drawn therefrom and were not improper.

ii.

> In this case, everyone has been made a suspect.  And there's some interesting things that weren't spoken about. But, how do we know that Defendant Rice did this?  Well, in this case, you've heard from Rodney Coleman.  And the judge is going to tell you you can accept some, none or all of what each witness says.
>
> *		*		*
>
> But why do we know that Gregory Rice did this?  Because [ ] Rodney Coleman comes and tells you that this happened.

*Id.* at 84-85.  These statements were made during rebuttal argument

Upon the Court's reading of the these excerpts in context, the "we" the prosecutor is

referring to is everyone who sat through the trial and heard the testimony; and not the prosecutor and the police as Petitioner argues. The prosecutor's comments did not imply any personal knowledge on the part of the prosecutor, but were instead proper comments on the evidence that had been introduced at trial and any reasonable inferences that could be drawn from them.

### 4.    Denigration of Defense Counsel

Although Petitioner raises this issue in his captioned argument, there is no substantive support within the text of his habeas petition. Therefore, Petitioner's conclusory claim is without merit.

For these reasons, the Court does not find that the prosecutor's conduct resulted in substantial or injurious effect on the outcome of the trial. *See Maurino v. Johnson*, 210 F.3d 638, 644 (6th Cir. 2000). Habeas relief will not be granted on Petitioner's prosecutorial misconduct claim.

### E.    Admission of Testimony (Claim V & VI)

Petitioner claims that the trial court erred in allowing the prosecution to elicit incompetent evidence of Rodney Coleman's prior consistent statements. Specifically, Petitioner asserts that the trial court erred in allowing the prosecution to elicit hearsay testimony from Stephanie Harris that her nephew, Rodney Coleman, gave her information, and that she conveyed this information to her boyfriend, who was a friend of the victim's father, and then conveyed it to Detective Shaw, which ultimately led to Petitioner's arrest. Petitioner states that various statements throughout Ms. Harris, Mr. Coleman and Detective Shaw's testimony should not have been admitted as evidence against Petitioner.

Petitioner also claims that Rodney Coleman's statements about fearing for his life at the hands of Petitioner and co-defendant Knight were erroneously admitted into evidence. As to both testimonial admissions, the Michigan Court of Appeals disagreed:

> There is no merit to defendant's claim that Harris' testimony that she spoke to people as a result of Coleman's statement, or that Shaw's testimony that he questioned defendant as a result of Coleman's statement, were hearsay statements. Nor was the testimony improperly allowed as a prior consistent statement of a witness, MRE 801(d)(1). Although, as defendant asserts, the definition of hearsay includes "nonverbal conduct of a person, if it is intended by the person as an assertion," MRE 801(a), here neither witness repeated the content of Coleman's statement. Moreover, neither Harris' nor Shaw's actions were offered to prove the truth of Coleman's statement. MRE 801(c), but only to explain how the investigation led to defendant Rice. The court did not abuse its discretion in allowing the testimony.

> Defendant also argues that he was denied a fair trial because Coleman's testimony that he was concerned for his safety and feared for his life was irrelevant . . . Here the challenged evidence was relevant to Coleman's credibility, which was very much at issue.

*Rice,* 2002 WL 3130158, *2.

It is well-established that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993); *see also, Olsen v. McFaul*, 843 F.2d 918, 933 (6th Cir. 1988) (such claims are almost always rejected as grounds for granting a writ of habeas corpus). Instead, questions concerning the admissibility of evidence, as well as its probative or prejudicial value, are properly left to the sound discretion of the trial court. *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir. 1979). Only where the admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may such a claim provide grounds for granting a writ of habeas corpus. *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

Additionally, what is or is not hearsay evidence in a state court trial is governed by state law. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 705 (E.D. Mich. 2004)(internal citations omitted). The Michigan Court of Appeals determined that it was proper to admit Ms. Harris' statements and those of Detective Shaw and Rodney Coleman as non-hearsay. A federal habeas court is bound by a state appellate court's ruling that certain testimony is not hearsay, because state law governs questions concerning the admissibility of evidence. *Id.* at 706.  Petitioner's claim that the trial court violated his right to a fair trial when it admitted these statements into evidence raises only an error of state law that is noncognizable in federal habeas review. *See David v. Lavinge,* 190 F. Supp. 2d 974, 981-82 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on his admission of evidence claim.

###    F.    Ineffective Assistance of Counsel (Claims VII & VIII)

Petitioner next claims that his defense counsel provided ineffective assistance of counsel in the following respects: (1) failed to object to the insufficient alibi jury instruction; (2) failed to object to the prosecutorial misconduct; (3) failed to object to Rodney Coleman's testimony regarding his fears for his safety; (4) failed to object to the inadmissible hearsay evidence involving Stephanie Harris, Detective Shaw, and Rodney Coleman; (5) failed to bring a motion to suppress Parneisha Jerry's testimony; (6) failed to follow through with his attempts to sever the  trials between Petitioner and Jerome Knight; (7) failed to prepare proposed jury instructions and applicable law for trials where there are multiple defendants; and (8) cumulative error as a result these referenced deficiencies in legal representation.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires

a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996).

Petitioner claims eight points of deficiency in his defense counsel's legal representation. As to claims (1) - (4), the Court finds no merit in Petitioner's ineffective assistance of counsel argument. The Court has already determined that these substantive claims are without merit, *supra.* Therefore, it is not ineffective assistance of counsel for there to have been no objection or further pursuit of the issue on the record at trial relative to these claims. Failure of defense counsel to pursue frivolous or meritless motions and objections cannot constitute ineffective assistance of counsel. *United States v. Hanley,* 906 F.2d 1116, 1121 (6th Cir. 1999).

### 1.    Parneisha Jerry's Testimony

Petitioner asserts that Ms. Jerry's testimony about voice mail recordings of co-defendant Knight threatening Ms. Hill was highly prejudicial and that defense counsel should have objected to its admission into evidence. Ms. Jerry was a long time friend of Ms. Hill. The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claim:

> First, although counsel for defendant did not object to Parneisha Jerry's testimony, counsel for co-defendant Knight did lodge an objection, which was overruled. In light of this unsuccessful objection, any objection by defendant's counsel would have been futile.
>
>  . . . Further, Jerry's testimony established that she had known codefendant Knight for three or four years, had spoken to him "numerous times," and had heard his voice on the telephone about forty times. This was sufficient to establish a foundation for Jerry's testimony that she recognized codefendant Knight's voice when she listened to the recorded messages MRE 901(a) and (b)(5). Additionally, there was no hearsay violation because if the statements testified to by Jerry even qualified as hearsay under MRE 801(c), they fit the "excited utterance" exception, MRE 803(2), and the "then existing mental or emotional condition" exception. MRE 803(3). Thus, counsel was not ineffective for failing to object to the testimony. With regard to defendant's argument that counsel was ineffective by failing to object to Jerry's testimony as highly prejudicial and lacking factual support, defendant fails to reference any trial testimony in direct support of the argument, and we decline to discover and rationalize the basis for his claims.

*Rice,* 2002 WL 3130158, *3.(internal citation omitted). For the reasons set forth, *supra,* Petitioner's substantive state law evidentiary claim relative to the admission of Ms. Jerry's testimony is without merit. Petitioner's defense counsel was not ineffective for not placing objections on the record relative to Ms. Jerry's testimony.

### 2.    Severance of Trials

Petitioner asserts that his attorney was ineffective for failing to demand separate trials so that the evidence of the voice mail recordings could not be used against him. The Michigan Court of Appeals disagreed:

> The record reveals that defense counsel initially requested separate trials, but then withdrew the request because there was no evidence that the defenses would be antagonistic. There is no reason to conclude, and defendant presents no authority to suggest, that the res gestae evidence of the reasons behind the killing would not have been admissible at separate trials. Counsel's decision to withdraw his motion was a matter of trial strategy, which this court will not second guess.

*Rice,* 2002 WL 3130158, *4 (internal citation omitted). This decision is neither contrary to, or an unreasonable application of Supreme Court precedent.

The issue of severance is governed by state law. *See Hutchison v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002). The Sixth Circuit has ruled that a severance claim cannot provide a basis for habeas relief because the United States Supreme Court has never clearly established a federal right to severance. *See Phillips v. Million*, 374 F.3d 395, 398 (6th Cir. 2004). Petitioner has failed to state a claim upon which habeas relief may be granted as to this issue. Moreover, courts favor the joinder of defendants charged with participating in the same act or series of acts because it is more efficient than conducting separate trials. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993).

Petitioner has not shown that "a specific trial right" was compromised or that his jury was prevented from making a "reliable judgment about guilt or innocence." *Id.* at 539. Since the claim is without merit, defense counsel was not ineffective for withdrawing his request for severance.

### 3. Proposed Jury Instructions

As to this claim, the Michigan Court of Appeals concluded that:

> Defendant also argues that counsel was ineffective for failing to request a jury instruction on multiple defendants, CJI2d 2.19, which instructs that "if any evidence was limited to one defendant, you should not consider it as to any other defendants." Contrary to defendant's claim, the evidence in this case, including the testimony of Ms. [J]erry, involved the res gestae of the crime and was properly considered against defendant. Counsel was not ineffective for failing to request the instruction.

*Rice,* 2002 WL 3130158, *4. As set forth above, to warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial

fundamentally unfair. *Estelle,* 502 U.S. at 72; *Kibbe,* 431 U.S. at 154. Petitioner has failed to show

that the absence CJI2d 2.19 rendered his entire trial fundamentally unfair. The extent of Petitioner's

argument is the conclusory position that the instruction would have assisted the jury in its evaluation

of the case. Since Petitioner has not demonstrated that his jury instruction claim has merit, he

likewise cannot show that defense counsel was ineffective for deciding not to request the jury

instruction at issue.

### 4.      Cumulative Errors of Defense Counsel

Petitioner claims that the cumulative nature of defense counsel's errors deprived him of the

effective assistance of counsel. The Michigan Court of Appeals found this claim to be without

merit:

> Finally, defendant argues that counsel was ineffective because of he cumulative
> effect of the multiple errors in this case. Because no errors have been found with
> regard to any of defendant's challenges there can be no cumulative effect.

*Rice,* 2002 WL 3130158, *4 (internal citations omitted). Because the individual claims of

ineffectiveness alleged by Petitioner lack merit, Petitioner cannot show that the cumulative errors

of his counsel amounted to ineffective assistance. *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir.

2000); *Alder v. Burt,* 240 F. Supp. 2d 651, 655 (E.D. Mich. 2003).

For these reasons, habeas relief is not warranted relative to Petitioner's ineffective assistance

of counsel claim.

### G.      Application of MRE 1004 (Claims IX -XII)

Petitioner claims that the trial court erred when it applied MRE 1004 regarding the admission

of the voice mail messages from co-defendant Knight to Ms. Hill because the original (the pager

where the messages were stored) was not destroyed and was in police possession. Any other manner

in which the prosecution sought to get this information admitted into evidence (Parneisha Jerry's testimony, joint trials, omission of CJI2d 2.9; and the severance of trials) was improper.

As set forth above, it is well-established that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle,* 502 U.S. at 67-68 (1991); *Pulley,* 465 U.S. at 41; *Serra,* 4 F.3d at 1354. Only where the admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may such a claim provide grounds for granting a writ of habeas corpus. *Clemmons,* 34 F.3d at 356. Petitioner has failed to demonstrate such fundamental unfairness. Habeas relief is denied as to this claim.

### H.    *Batson v. Kentucky* **(Claims XIII -XXI)**

"It is settled that the Constitution's guarantee of equal protection ensures that a party may not exercise a peremptory challenge to remove an individual on account of that person's race." *McCurdy v. Montgomery County, Ohio*, 240 F.3d 512, 521 (6th Cir. 2001). In other words, the Equal Protection Clause prohibits prosecutors from "challeng[ing] potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson v. Kentucky*, 476 U.S. 79, 89 (1986).

In *Batson*, the Supreme Court "outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause." *Hernandez v. New York*, 500 U.S. 352, 358 (1991). "First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race." *Id*. To establish a *prima facie* case of purposeful discrimination during the selection of a jury:

[T]he defendant first must show that he is a member of a cognizable racial

-33-

group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury . . . raises the necessary inference of purposeful discrimination.

*Batson*, 476 U.S. at 96 (internal citations omitted). Once the defendant has made a prima facie showing, the burden then shifts to the prosecution to offer a race neutral explanation for challenging the jurors. *United States v. Harris*, 192 F. 3d 580, 586 (6th Cir. 1999). "[T]he government's reason need not be particularly persuasive, or even plausible, so long as it is neutral." *Id.* Lastly, the trial court is charged with determining whether the defendant has established purposeful discrimination. *Id.* Normally, the remedy for a *Batson* violation is to either (1) discharge the venire and select a new jury from a panel not previously associated with the case, or (2) disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire. *Batson*, 476 U.S. at 99, n. 24. However, when the procedural posture of the case is such that neither of these two remedies are available, automatic reversal of the conviction is required. *Id.* (remanding for further proceedings, and holding that "[i]f the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner's conviction be reversed"*); Avery v. Georgia*, 345 U.S. 559, 561 (1953) (finding that jury selection conducted on the basis of race requires reversal notwithstanding the strength of the evidence against the accused); *see also, Vasquez v. Hillery*, 474 U.S. 254, 263-64 (1986).

The last state court to review Petitioner's *Batson* claims, the Michigan Supreme Court, noted

that the resolution of Petitioner's *Batson* challenge was difficult because the trial judge failed "to rigorously follow the *Batson* procedures and, more importantly, to clearly articulate her findings and conclusions on the record." *See People v. Rice*, 473 Mich. at 349. Despite the absence of such procedures and clear findings, the Michigan Supreme Court found that "the trial court did not, in fact, find a *Batson* violation and, thus, there is no error to complain of in these cases." *Id.*

Specifically, the Michigan Supreme Court found that:

> On the basis of our reading of the voir dire transcripts, we conclude that the trial court did not, in fact, find a *Batson* violation and, thus, there is no error to complain of in these cases. The trial judge's initial expression of dissatisfaction with the prosecutor's race neutral reasons, when considered in context with her subsequent remarks that "we are getting close to a sensitive issue," related to her concern about the number of minority veniremembers left on the panel. The judge further articulated her actual motivation in the following excerpt: "I think all of us are being, trying to be conscientious about the selection of these jurors *because of the racial makeup of the jury panels, which we don't have any control over."* The trial judge's remarks do not reflect a finding that the prosecutor engaged in purposeful discrimination. Rather, the comments demonstrate that her true motivation was to ensure some modicum of racial balance in the jury panel. Use of peremptory challenges, however, to ensure racial proportionality in the jury is prohibited by *Batson . . .*

> The trial judge never expressly found that the prosecutor exercised peremptory challenges for a racially discriminatory reason. In fact, her comments at the end of jury selection suggest a contrary conclusion. The trial judge was more concerned with achieving a proportionate racial composition on the jury than with the exclusion of veniremember Jones. She ultimately concluded that no *Batson* violation existed because a satisfactory number of African-American females were still present on the jury.

> The purpose of *Batson* is to prevent discriminatory exclusions of veniremembers on the basis of race or gender. Here, the jury pool, by chance contained a greater number of Caucasians than African-Americans. The trial judge was preoccupied with this fact. Her *Batson* analysis seemed to be infused with and confused by the erroneous belief that *Batson* is violated if the challenge resulted in too few minority jurors. The trial judge's statements did not imply that she would have kept Jones and Johnson on the jury because she thought they had been wrongfully excluded on the basis of race. Rather, her statements implied that she would have kept them on the jury to ensure that the number of African-American jurors remained proportionate to the number of Caucasian jurors.

The trial judge failed to recognize that a defendant is not entitled to a jury of a particular racial composition as long as no racial group is systematically and intentionally excluded. Defendants' jury was drawn from a fair cross section of the community. Nor was any racial group systematically excluded.

473 Mich. at 349-351.

"Under AEDPA, [] a federal habeas court must find the state-court conclusion 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Rice v. Collins*, 546 U.S. 333, 338 (2006). In order to grant Petitioner relief, this Court must determine that the Michigan Supreme Court's conclusion that the trial court found no *Batson* violation to be an unreasonable decision in light of the evidence adduced during the proceedings.

This Court concludes that the Michigan Supreme Court's decision was an unreasonable determination of the facts in light of the evidence presented during the trial court proceedings. A reading of the record demonstrates that the trial court found a *Batson* violation, and that the trial court impermissibly relied on the fact that the racial makeup of the sworn jury panel cured any *Batson* problems that had occurred.

On the third day of jury selection, the prosecutor exercised three peremptory challenges to exclude three African-American females, venire members Bonner, Johnson and Jones. The defense objected to the prosecution's peremptory challenge to Jones, arguing that the prosecutor was using peremptory challenges to exclude three African-American females. Without waiting for the trial court to rule on whether the defense had presented a *prima facie* case, the prosecutor provided her race-neutral reasons for excluding these venire members. The prosecutor stated that, in regard to Ms. Johnson, that "looking at her body language when she was seated and the tone of her voice and the look that she gave when she indicated that she could be fair; she was hesitant in her demeanor.

-36-

And she also indicated that she had a close relative that was convicted of a drug charge. And although she indicated that she could be fair, she was very reticent in terms of her demeanor." (Tr., Vol. III at 87)  As to Ms. Jones, the prosecutor stated that she "has a child that's close in age to the victim in this case.  She's a person that is a working person that is in some type of professional position at Blue Cross."  (*Id.*)

The trial court indicated that:

> Just before we recessed for lunch, I thought that it was very clear that we didn't have a problem here.  But now I think we are getting very close to a sensitive issue.  I didn't see a problem with –Christine Johnson. She was, actually her demeanor was soft and she seemed forthright and honest.  And I understand with Miss Bonner, I didn't see any problem with that.  But I was surprised about Miss Johnson.  I didn't say anything because the defense didn't object.  So I didn't object.

> The same thing with Miss Jones.  I do not see a reason other than – I mean, it seems to me for the prosecution to say, she has a daughter the same age as the victim, that would seem to work in the prosecution's favor, just in terms of thinking in the jury selection.  *So I don't accept that.*

>          *                         *                         *
> I *wish somebody had said something about keeping Miss Jones and Miss Johnson.*  And then we address this matter because I probably would not have excused either one of them.

(Tr., Vol. III at 88-90)(emphasis added)    Later defense counsel asked the trial court to make a definitive ruling on his *Batson* challenge to Ms. Jones.  "But I don't think the Court ruled on whether or not you're going to allow Miss Jones to be struck.  She's still downstairs, I'm sure."  (Tr., Vol. III at 93) The trial court stated, "If she is still here, *I'm going to keep her*."  (*Id.*)(emphasis added) However, the deputy informed the trial court that Ms. Jones had already left the building.  (*Id.*)

After further discussion, the trial court stated:

> *I'm not satisfied with the prosecutor's response to potential juror Jones and Johnson.  But I think they've already left.*
>       *                         *                         *

> I'm just saying, *I let Jones and Johnson go without holding them, especially Jones. I guess I should have held her and I didn't do that.* But from this point on let's try to be careful with this jury selection.

(Tr., Vol. III at 95-96)(emphasis added)  At the end of jury selection, the trial court stated:

> With the panel we ended up with, I think that any *Batson* problems that may have been there have been cured. We have the same number if not more jurors, African American female jurors on the panel as if we had kept Christina Johnson and Miss Ruby Jones.  I don't think either side ended up selecting this panel for any reason other than I think that these are the ones who will be the fair and impartial persons to hear and try this case.

(Tr., Vol. III at 131-32)

Based on the above record, this Court cannot conclude that the Michigan Supreme Court's decision, that the trial court had not found a *Batson* violation, was a reasonable determination of the facts in light of the evidence presented.  A thorough reading of the record establishes that the trial court did not accept the prosecutor's reasons for dismissing prospective jurors Jones and Johnson. The trial court had accepted Petitioner's prima facie case: (1) he is an African American, or a member of a cognizable racial group, (2) he is entitled to rely on the fact that prosecutors sometimes use peremptory challenges in a discriminatory manner and (3) the fact that the prosecutor excused three African Americans from the venire *could* establish an inference that the prosecutor used her peremptory challenges to exclude prospective jurors on the basis of race.

Further, the trial court rejected the prosecutor's race neutral reasons for dismissing jurors Jones and Johnson, and had determined that defendant had established purposeful discrimination.  The third step of the *Batson* inquiry requires the challenging party to "demonstrate that the purported explanation is merely a pretext for a racial motivation." *McCurdy,* 240 F.3d at 521. "Because the primary defense to pretext based violations of *Batson* is the [trial] court's ability to assess the credibility of an attorney's representations, it is critical that

-38-

the [trial] court independently assess the proffered justifications." *Id*. (citing *Hernandez,* 500 U.S. at 365). "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003). The trial judge clearly rejected the prosecutor's race neutral reason as pretext. There is no explanation as to why the trial judge would have kept Jones on the panel, an appropriate remedy to cure a *Batson* violation, if she did not so conclude.

The Court further finds that the trial court's final determination that any *Batson* violation had been cured by the final composition of the jury panel was inappropriate. In *Harris*, the Sixth Circuit remanded the case to the district court to revisit the appellant's *Batson* challenge, finding that the district court had summarily denied the challenge while relying on improper factors to reach its conclusion that no violation had occurred. *Id.* at 587-88. Specifically, the district court, similar to the trial court in Petitioner's case, relied on the fact that one African American "was in fact seated on the jury." Id. at 587. The Sixth Circuit rejected reliance on this factor, noting that "the presence of one African-American on the jury does not preclude a *Batson* challenge." *Id.* Similarly, the trial court's reliance on the fact that the final jury consisted of the same number, if not more, of African American jurors was of no consequence to correcting the *Batson* violation. Here, the state's highest court unreasonably determined the facts in light of the evidence presented at trial, the state trial court incorrectly applied *Batson*, and Petitioner was not afforded the only remedy that existed at the time, "to discharge the venire and select a new jury from a panel not previously associated with the case." *Batson*, 476 U.S. at 99, n. 24.

The remedy in this situation is to reverse Petitioner's conviction and remand for a new trial. The Court grants Petitioner a conditional writ of habeas corpus.

**IV. CONCLUSION**

Accordingly,

IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS CONDITIONALLY GRANTED. UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN NINETY (90) DAYS OF THE DATE OF THIS OPINION IF NO APPEAL IS TAKEN, OTHERWISE, WITHIN NINETY (90) DAYS AFTER ANY APPELLATE AVENUES ARE EXHAUSTED AND A MANDATE ISSUED, PETITIONER MAY APPLY FOR A WRIT ORDERING RESPONDENT TO RELEASE HIM FROM CUSTODY FORTHWITH.

IT IS FURTHER ORDERED that Respondent serve a copy of this Opinion and Order to the appropriate State Court and Prosecuting Attorney within ten (14) days' receipt of this Opinion and Order.  Respondent must file a proof of service with the Court.

IT IS SO ORDERED.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  March 31, 2010

    I hereby certify that a copy of the foregoing document was served upon Gregory M. Rice, Reg. No. 296423, St. Louis Correctional Facility, 8585 N. Croswell Rd., St. Louis, MI 48880 and counsel of record on March 31, 2010, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager